Good morning, Your Honors. May it please the Court, my name is Craig Huber and I represent the appellants in this matter, which are BCD Music Group, Inc. and Deep Distribution Worldwide. And this matter is here on an appeal of an order amending a stipulated judgment to add a third-party deep distribution to a judgment as well as a denial and a motion to reconsider. Did you say that you're representing both BCD and Deep? That is correct, Your Honor. Don't they have a conflict? I mean, what's BCD's interest in this? Well, BCD was the underlying judgment debtor. But the ruling of the court just says that Deep is going to pay instead of BCD. Well, it actually Isn't that a benefit to your client? Isn't that a conflict of interest? We've actually conferred with the client and they have agreed to pay. But what's BCD's problem with this order? Well, BCD doesn't expressly have a problem with the order. It's really Deep that is appealing the amendment of the judgment. Right. So, I mean, I just don't read anything in your brief that says that this order somehow injured BCD. It's a stipulated judgment that BCD actually No, I understand. But we're here on the order amending the judgment to add DDW as a That's right. As a defendant. That didn't harm BCD in any way, did it? Adding somebody, adding another judgment debtor to the case. How did that harm BCD? Well, it didn't express the harm. Okay, so talk about what harm. Talk about, it seems to me you're only really here on behalf of DDW, whatever you're saying. Unless BCD and DDW are the same. Unless they're the same, in which case you lose. They are not. So, what's your complaint with what the district judge did? Several, Your Honor. Primarily, initially we argued that the court should have applied Texas law. And there's this Texas statute. But you don't do that there. We did not. And we would respectfully ask the court to exercise its discretion. Well, but think about, you know, think about when you have a civil jury trial. And the lawyers give the instructions to the judge. And they give the wrong instructions to the judge. It doesn't matter because then that becomes a law. It's not like a criminal case. Here, everyone argues California law. And now suddenly it's like, oh, we lost under California law, so let's go to Texas law. Well, the reality is everybody missed the issue, Your Honor. So, but it's a civil case. So, if that's what you all told the judge was the law, why should the judge be faulted? Well, because it's a plain error of law. And the fact of the matter is that Texas law should apply under California's governmental interest test. And this court has discretion to relieve a party. And if you had won, it wouldn't be a plain error, right? I'm sorry, Your Honor? If you'd won under the wrong law, it wouldn't be a plain error, right? I can't speak to what might have happened, Your Honor. Well, let me ask that question a little differently. Do you lose if we apply California law? No, we do not. Okay. So let me, I have a question about the record here. Yes. This was decided by the district judge on cross motions, if you will, affidavits, et cetera? That's correct. What's our standard of review? The standard of review is a plain error, Your Honor. Why is that? You're determining what you're giving deference to the trial court. Why? Because the trial court was in a position to determine the credibility of witnesses and to weigh the evidence. Was there any testimony taken in front of the trial judge? There was not, but there were declarations. So why is the trial judge in a better position to weigh the testimony and determine credibility when he's only looking at pieces of paper? Why is our standard of error clear of view? Well, this wouldn't necessarily turn on specifically whether or not the trial court weighed the evidence in favor of one party versus the other. We would contend that he committed error insofar as his evaluation of the particular factor. I mean, I don't want to make your arguments for you, but let me try. Tell me where I'm wrong so I can ask your opponent this. The judge did this on the papers. That is correct. So, in effect, he granted a summary judgment to the other side on adding an additional judgment debtor. That's correct. If that's correct, tell me where there are material questions of disputed fact. Or is it your position that there were no material questions of disputed fact, the judge just got it wrong on the law? There were disputed issues, Your Honor. Where were they? There were disputed issues with respect to whether or not BCD and DEEP had a shared ownership, whether there were assets that were transferred, whether BCD had actually sold particular assets to DEEP. But you essentially asked the judge to decide it on the papers. You didn't offer live testimony. You said, this is the way we want to do it, right? That's correct. And we did that with respect to the judge. And the judge didn't say, you have to do it this way. You guys both just said, hey, this is the way we want you to decide this, and it's California law. We didn't necessarily see the opportunity to present live testimony. Did you ask to? Did you move to have an evidentiary hearing with live testimony? We did not, Your Honor. So how can you complain on appeal that there are disputed questions of fact? Well, we contend that the record indicates that there was error with respect to the particular findings, with respect to what actually happened, the separateness of these two entities. What remedy do you seek? We would respectfully request that the Court reverse and apply and reinstate the original stipulated judgment. But if you think there are disputed errors, disputed issues of fact, wouldn't the remedy you got be a hearing in front of the district judge to determine what the facts are so the judge could determine whether or not to add this standard? Well, we would argue, Your Honor, that there is a sufficient record before this Court, as there was before the district court, to determine that the two entities are, in fact, separate. So you want us to be a trier of fact here based on the records? Well, we think Your Honor can get to the issue with respect to the records. As a matter of law. As a matter of law, looking at this record, there is only one conclusion that anybody could reach, which is that there is no alter ego. Is that what you're saying? That is our contention, that this Court could get to that issue as a matter of law. And we believe that the record was sufficiently developed before the trial court and now presents before this Court to allow the Court to determine it. So that's the only conclusion the district judge could have reached looking at this record under California law? That's your position? We believe so, Your Honor. Yes, we believe that. And we stress also, Your Honor, that one of the other important aspects of this is the wasn't afforded its due process right to actually defend itself with respect to the demanding of the judgment. This took place in a post-stipulated judgment proceeding. But I don't understand that argument. If the judgment was entered, it's stipulated. Nobody doubts that the money is owed from. That's correct. And the only question here is whether they're the alter ego. If they're the alter ego, whether they had a chance to defend themselves at the time of the judgment would be irrelevant, wouldn't it? Well, the law holds that you have to be virtually represented at the proceeding. Well, right. And didn't the judge find that they were because there was common ownership and common boards of directors and common? He found that the presence of Mr. Blakeslee, who was a principal of BCD and also a principal of DEAP, having been present at the settlement conference and ultimately stipulating to the judgment was sufficient to alleviate any due process concerns. And the fact of the matter is DEAP at that time didn't face liability for the acts for which BCD stipulated to a judgment. The sum and substance of it is there were 43 sound recordings that were infringed that were owned by UMG. And DEAP had nothing whatsoever to do with that. Well, everybody agrees that DEAP had nothing to do with it. The question isn't whether they had something to do with it, but whether they were the alter ego. But the point is, had they had the opportunity at this settlement conference, they had valid, legitimate defenses to the infringement claim. They weren't distributing any of these. Again, I'm having difficulty understanding. Is it your argument that the judge erred as a matter of fact in determining that they were virtually represented? Yes. Okay. If he erred as a matter of fact in doing that, is there any evidence from which he could so conclude, since this gentleman was there and took part in the settlement conference? Well, the evidence is in the record indicating that DEAP had nothing whatsoever to do with the distribution of these sound recordings. And at the time the settlement was entered into at BCD, it wasn't facing liability. Add to that also, Your Honor, there was a summary judgment that was granted in favor of UMG prior to the settlement. And I understand that, but I think we're having some difficulty communicating about what alter ego means. It doesn't mean that the alter ego actually committed the underlying offense or breach of contractor or copyright infringement. It just means that its interests are so bound up with the other one, with the infringer in this case, that they should be treated as one entity. So the fact that there's no evidence in the record establishing that DEAP did anything wrong with respect to the copyright infringement isn't really relevant to the alter ego determination, is it? Well, we feel that it is because ultimately when the issue was in front of the district court, what was actually in error in determining that DEAP was the alter ego, because the facts in front of it at the time, which we feel the record is sufficiently developed to examine, indicate that these entities are completely separate. And there were clearly erroneous findings by the trial court, in particular related to the formation of DEAP itself. He had found that DEAP was formed after the lawsuit was filed against BCD, but before judgment was entered, and determined that that was indicia of this entity having been formed to make judgment. Could you correct that in the motion or ruling on the order for motion? Well, he didn't really, Your Honor. What he did was said that the relevant evaluation should be when DEAP assumed the business operations of BCD, which we contend that the record indicates that never happened. There was one arm's-length transfer of assets as between BCD and DEAP. It was the sale of non-mixed tapes, and it was for full, fair consideration. There was no evidence that that was not an arm's-length transaction. There was no evidence that that was an improper transaction between the two entities. And, in fact, we would contend that it's indicia of the continuing operation of BCD and its viability at the time of that transfer. All right. Your time, we've taken you over time. Unless the panel has other questions, your time has expired. Thank you. Thank you. Good morning. May it please the Court, I'm Kevin Goldman. I represent the appellee, UMG Recordings, Inc. As I believe that the panel has sort of recognized already, AlterEgo is a uniquely fact and equity-based device that isn't dependent merely on a checklist of factors or a checklist of elements. And that's sort of illustrated by the way that different courts describe the doctrine in different ways. It's a doctrine that is designed simply to do justice, to make sure that a party that is subject to a judgment of the court, which is much more serious than just a contractual debt or. . . Right. So the stipulation takes care of the merits of the copyright violation. Correct. So this is just a procedure to decide on the AlterEgo. In front of Judge Otero. . . it was Judge Otero, right? Did anyone ever say that they wanted some sort of different procedure in terms of handling it? Or did they basically say, hey, this is the evidence. We want you to decide it based on this evidence. And we want you to decide based on California law. No, there was no. . . In fact, it wasn't just that the issue of what law applied was overlooked. It was that both parties affirmatively asserted that California law applied. And in both of their briefs, they said California law applies to this dispute. There was no disagreement on that. And to pass the California law issue, tell me what we do with this, because this is what troubles me about the case. The judge finds AlterEgo, and the judge makes a bunch of findings. As I go through the record, I think some of them, there's evidence on both sides. But there's no hearing. So how do we evaluate findings made by the judge on affidavits on a record? For example, corporate formalities. He says at one point he didn't observe corporate formalities, but there's some pretty good evidence that they did. I actually don't think Judge Otero said that. But I think what he said was that BCD was essentially a judgment-proof entity superficially veiled by corporate formalities. Anyone can fill out a corporate minute book. That doesn't mean that the reality of the situation is. . . So are there any disputed facts in this case? Yes, there were numerous disputed facts. And to go back to your. . . Okay, so how do we evaluate whether the judge correctly found one side or the other on disputed facts when it was only done on a record? Well, you start with the principle that BCD slash DDW didn't ask for an evidentiary hearing. So the parties were perfectly happy to submit the decision to Judge Otero purely on declaration. But can't you have an evidentiary hearing based on affidavits? You can. But had there been a live testimony, Mr. Blakeslee would have been subject to cross-examination on his declaration, and they made a conscious decision. I know, but when I was a trial judge, a lot of times people came in and said, Judge, we want you to decide this based on these affidavits, or we want you to review this transcript, decide whether the person, you know, make a determination based on that. People can do that, right? My understanding of the law is that the trial judge can assess credibility on declarations in exactly the same way the trial judge assesses credibility on live testimony. True, the trial judge isn't observing whether the witness was sweating or looked nervous or was shifting their eyes, but the trial judge can look at the content of the declaration and determine that one party is less credible than the other. And that's exactly what Judge Otero did here. He said that many of Mr. Blakeslee's assertions, and this is a quote, were supported by nothing other than Mr. Blakeslee's sheer assertion that they are true. They lacked foundation. And there were many disputed issues, in fact. One stands out, which is that we presented a declaration from Super D, one of BCD slash DDW's customers, that said that BCD and DDW were submitting to us invoices that were commingled. That one day they said BCD, the next day they said DDW for the same merchandise. Mr. Blakeslee said, no, no, no, that invoice was prepared by Super D, not by us. We submitted a counter declaration from Super D saying, I understand you said that, that's not true. And that's sort of what troubles me about this case. And maybe the other side has waived it by not raising it. But you've got these competing declarations, this, that, and the other. And the judge says, I believe one of the declarations. And, you know, typically in several cases what happens is when there's a dispute of fact, the judge looks the people in the face and says, you're not credible. And we give them enormous deference. Well, I think that there are a variety of ways that happens. There are all kinds of appeals from, for example, preliminary injunctions where the district judge relies solely on affidavits and decided that a party was likely to prevail. And in that case, do we defer to the judge's factual findings? I think you defer to the findings in the same way you would if there was live testimony. And by the way, Judge Otero did meet Mr. Blakeslee. He got to see him face-to-face in the settlement conference. I'd be interested if you know off the top of your head, I haven't seen any in the briefs, a case that says that we defer to factual findings made on paper. My understanding, and it's not in the briefs, you're right, but I think from experience, I recall this, I believe that the same standard applies whether the determination was on declarations or was on live testimony. And, again, in any event, nobody requested live testimony. And, in fact, that benefited them because we weren't able to cross-examine Mr. Blakeslee. I can assure you I would have loved to cross-examine Mr. Blakeslee about the many things he said in his declaration that made no sense, that were at odds with the facts, and that simply didn't ring true. Because, ultimately, what the district court was faced with here was a sort of gestalt of facts, where you had two superficially separate entities, two corporations. They were in the same business. They had the same owners. They had the same products. They were in the same office. They had the same employees, and they had the same customers. The only difference was that one of them did nothing but serve as a repository for a $7 million judgment, and the other one was an ongoing, successful, profitable business that didn't have to worry about the judgment. Did DDW pay, as I recall in this record, pay BCD for certain assets that were, in effect, transferred over? According to Mr. Blakeslee's declaration, which, of course, we weren't able to cross-examine, he claimed a payment was made. $135,000 or something like that? True. But, of course, that omits to state that that was simply for a physical product. A business is much more than a physical product. A business is its ongoing relationship with customers, its goodwill, its employees, its accounts receivable. None of that was transferred for any consideration at all. But is that some evidence that one was not the alter ego of the other? Because that $135,000, I take it, became subject to execution by the creditors, if it existed. I don't know that it is. Well, I mean, UMG was a creditor, and we never saw any of that, so I don't know where that money went. And, again, there's no evidence. There's no foundation for the evidence. Again, it's, as the district court said, Mr. Blakeslee simply asserts things, and there's no support for it. He could have had an evidentiary hearing where he presented actual canceled checks, and he didn't. But, ultimately, the district court had a single enterprise. The courts have phrased it in different ways, but one of the ways the courts phrase it is that you're just looking to see whether, sure, it may be two superficially separate corporations with separate minute books, but is it a single enterprise? And the evidence was overwhelmingly clear, whether or not you nitpick about one or two factual findings. The evidence was overwhelmingly clear that this was a single enterprise run by the same people in the same business with the same employees, the same customers. And the second company was conveniently created when the first company was subject to three separate judgments for copyright and or trademark infringement, and the second company continues to operate successfully while the first company does nothing but hold the judgment. And the timing, was the second company created before the judgments but didn't begin operations until after, or was it created after the judgment? The record shows that a dormant corporation called HKML, Inc., was formed, I think, in 2006 or 2007. But it didn't do anything. Was the litigation ongoing at that time? Had the litigation begun in 2006 and 2007? That corporation may have been formed prior to the commencement of this litigation, but DDW didn't become DDW and didn't begin until August 2008, which was, at that time, a month before the trial date, which later got continued for a few months, and shortly after, BCD had just lost two other cases, or was about to lose two other cases in two other districts. Unless the panel has any other questions, I could repeat a lot of what's in my brief, but it seems like the panel is pretty familiar with the record, and I don't need to take up any more time. We don't have additional questions, and we promise we do read those things. We're always happy for you to finish early. Take the minute and use it for your next case. All right. Thank you for your time. All right. Your time has all been used. So unless the panel has additional questions, we don't. So this matter will stand submitted. Thank you.
judges: Callahan, Ikuta, Hurwitz